**United States District Court**
For the Northern District of California

1
2
3                          UNITED STATES DISTRICT COURT
4                          NORTHERN DISTRICT OF CALIFORNIA
5
6
7    PLES CROSS,
8                        Petitioner,              No. C 05-4283 PJH (PR)
9        vs.                                      **ORDER DENYING**
                                                  **HABEAS PETITION**
10   A. P. KANE, Warden; A. PEREZ, Chair,
     Board of Prison Terms; and ARNOLD
11   SCHWARZENEGGER, Governor,
12                        Respondents.
                                             /
13
14          This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.
15   The petition is directed to denial of parole.
16          The court ordered respondent to show cause why the writ should not be granted.
17   Respondent has filed an answer and a memorandum of points and authorities in support of
18   it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For
19   the reasons set forth below, the petition will be denied.
20                                  **BACKGROUND**
21          In 1983 petitioner was convicted in Los Angeles County Superior Court of first
22   degree murder with use of a firearm.   Ex. 1 (transcript of hearing) at 1 and pet. at 2.[1]  He
23   was sentenced to prison for twenty-seven years to life.  *Id.*; *id.* at unnumbered correction
24   page foll. 56.  On September 5, 2003, after a hearing before the Board of Prison Terms
25   ("Board"), during which petitioner was represented and was given an opportunity to be
26
27   _____
         [1]  Citations to "ex." without more are to the record filed by the respondent as
28   attachments to his answer.

heard, the Board found petitioner unsuitable for parole. *Id.* at 57-63. Petitioner's state habeas petition challenging the denial was denied by the Los Angeles Superior Court in a reasoned opinion, pet. ex. A, and the California Court of Appeal and the California Supreme Court summarily denied subsequent petitions directed to the denial, ex. 2.

**DISCUSSION**

**I.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

**United States District Court**
For the Northern District of California

1    "Factual determinations by state courts are presumed correct absent clear and

2    convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not

3    altered by the fact that the finding was made by a state court of appeals, rather than by a

4    state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

5    1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present

6    clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness;

7    conclusory assertions will not do.  *Id.*

8         Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

9    determination will not be overturned on factual grounds unless objectively unreasonable in

10   light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340;

11   *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

12        When there is no reasoned opinion from the highest state court to consider the

13   petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,

14   501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

15   Cir.2000).

16   **II.    Issues Presented**

17        Petitioner contends that (1) the denial of parole was not supported by some

18   evidence that petitioner is currently an unreasonable risk to society; (2) the Board of Parole

19   was biased against him, in that it has a policy of almost always denying parole; and (3) the

20   governor is collaterally estopped from exercising his authority under section 3014.2 of the

21   penal code, which allows the governor to over-ride parole decisions.

22        Among other things, respondent contends that California prisoners have no liberty

23   interest in parole and that if they do, the only due process protections available are a right

24   to be heard and a right to be informed of the basis for the denial – that is, respondent

25   contends there is no due process right to have the result supported by sufficient evidence.

26   Because these contentions go to whether petitioner has any due process rights at all in

27   connection with parole, and if he does, what those rights are, they will be addressed first.

28   ///

United States District Court

For the Northern District of California

**A.      Respondent's Contentions**

     **1.      Liberty Interest**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause.  The right was created by the "expectancy of release provided in [the Nebraska parole statute.]"  That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts.  *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987).  There it held that a similar liberty interest was created even though the parole board had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995).  *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz,* at 7, a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has a liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

United States District Court

For the Northern District of California

1    Respondent contends that California law does not create a liberty interest in parole.

2   But California's parole scheme uses mandatory language and is similar to the schemes in

3   *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest

4   in release on parole.  In California, the panel or board "shall set a release date unless it

5   determines that the gravity of the current convicted offense or offenses, or the timing and

6   gravity of current or past convicted offense or offenses, is such that consideration of the

7   public safety requires a more lengthy period of incarceration for this individual, and that a

8   parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  Under

9   the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme

10   gives rise to a cognizable liberty interest in release on parole."  *McQuillion v. Duncan*, 306

11   F.3d 895, 902 (9th Cir. 2002).  The scheme requires that parole release be granted unless

12   the statutorily defined determination (that considerations of public safety forbid it) is made.

13   *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set

14   parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest).  In

15   sum, the structure of California's parole scheme -- with its mandatory language and

16   substantive predicates – gives rise to a federally protected liberty interest in parole such

17   that an inmate has a federal right to due process in parole proceedings.

18    Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S.

19   Ct. 92 (2005), as authority for his contention that the California statute does not create a

20   liberty interest in parole.  This argument has been rejected by the United States Court of

21   Appeals for the Ninth Circuit.  *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-

22   28 (2006).

23    Respondent's argument as to liberty interest is without merit.

24        **2.    Due-Process Protections**

25    Respondent contends that even if California prisoners do have a liberty interest in

26   parole, the due process protections to which they are entitled by clearly-established

27   Supreme Court authority are limited to notice, an opportunity to be heard, and a statement

28   of reasons for denial.  That is, he contends there is no due process right to have the

United States District Court

For the Northern District of California

1   decision be supported by "some evidence."  This position, however, has been rejected by

2   the Ninth Circuit, which has held that the Supreme Court has clearly established that a

3   parole board's decision deprives a prisoner of due process if the board's decision is not

4   supported by "some evidence in the record", or is "otherwise arbitrary."  *Irons v. Carey*, 479

5   F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary

6   hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306

7   F.3d at 904 (same).  The evidence underlying the Board's decision must also have "some

8   indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915.  The some

9   evidence standard identified in *Hill* is clearly established federal law in the parole context for

10  purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

   **B.**     **Petitioner's Claims**

   **1.**      **Application of "Some Evidence" Standard**

13      Petitioner contends that the denial of parole was not supported by "some evidence."

14      Ascertaining whether the some evidence standard is met "does not require

15  examination of the entire record, independent assessment of the credibility of witnesses, or

16  weighing of the evidence.  Instead, the relevant question is whether there is any evidence

17  in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472

18  U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures

19  that "the record is not so devoid of evidence that the findings of the disciplinary board were

20  without support or otherwise arbitrary."  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at

21  457).

22      In several recent cases the Ninth Circuit has discussed whether the "some evidence"

23  standard can be satisfied by evidence of the nature of the commitment offense and prior

24  offenses.  In *Biggs*, the court explained that the some evidence standard may be

25  considered in light of the Board's decisions over time.  *Biggs*, 334 F.3d at 916-917.  The

26  court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful

27  balancing and assessment of the factors considered . . . A continued reliance in the future

28  on an unchanging factor, the circumstance of the offense and conduct prior to

1  imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and

2  could result in a due process violation." *Id.*  Although the *Biggs* court upheld the initial

3  denial of a parole release date based solely on the nature of the crime and the prisoner's

4  conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs

5  continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a

6  parole date simply because of the nature of his offense would raise serious questions

7  involving his liberty interest." *Id.* at 916.

8        The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function

9  to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129.

10  *Sass* determined that it is not a due process violation per se if the Board determines parole

11  suitability based solely on the unchanging factors of the commitment offense and prior

12  offenses.  *Id.* (prisoner's commitment offenses in combination with prior offenses amounted

13  to some evidence to support the Board's denial of parole).  However, *Sass* does not

14  dispute the argument in *Biggs* that, over time, a commitment offense may be less probative

15  of a prisoner's current threat to the public safety.

16        In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded

17  that relief for Irons was precluded by *Sass*.  *See Irons*, slip op. at 8349.  The Ninth Circuit

18  explained that all of the cases in which it previously held that denying parole based solely

19  on the commitment offense comported with due process were ones in which the prisoner

20  had not yet served the minimum years required by the sentence.  *Id.*  Also, noting that the

21  parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the

22  prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to

23  recognize that in some cases, indefinite detention based solely on an inmate's commitment

24  offense, regardless of the extent of his rehabilitation, will at some point violate due process,

25  given the liberty interest in parole that flows from relevant California statutes." *Id.* (citing

26  *Biggs*, 334 F.3d at 917).

27        That is not what happened here, however.  The Board based its decision upon the

28  cruelty and callousness of the crime and its calculated manner, the triviality of the motive,

United States District Court

For the Northern District of California

1  petitioner's escalating pattern of criminality, his unstable social history, problems with his

2  psychological report, the need for him to "shore up" his employment plans, and the

3  opposition of the prosecutor.  Ex. 1 at 57-60.  That is, the decision was based to a

4  considerable extent on factors in the past – the circumstances of the crime, petitioner's

5  prior criminal record, and his unstable social history – but also on other factors.  And in any

6  event the hearing at issue here was held only twenty years into petitioner's twenty-seven-

7  years-to-life sentence.  Therefore under the reasoning in *Irons*, the *Biggs* dictum that at

8  some point the characteristics of the offense will ease to be "some evidence" does not

9  apply to this hearing.  *See Irons*, slip op. at 8349.  For these reasons, this is not a "*Biggs*

10  case."

11       Petitioner had given the victim a ring to sell for him.  Ex. 1 at 10-11.  For reasons

12  that do not appear in the record, the victim refused to give the ring back.  *Id.*  Petitioner

13  went to the victim's house with a rifle, waited more than an hour for him to come home,

14  shot him in back, went through his pockets, then shot him again.  *Id.* at 11-12, 56-58.

15  These facts are sufficient to support the Board's conclusion that the crime was particularly

16  callous and that the motive was very trivial.  In addition, petitioner's psychological report

17  contained a statement that petitioner "may have some negative orientations towards

18  society in general due to his incarceration . . . ."  Ex. 1 at 59.  There was sufficient evidence

19  to support the denial.  *See Rosas v. Nielsen*, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (facts

20  of the offense and psychiatric reports about the would-be parolee sufficient to support

21  denial).

22       Becaue there was no constitutional violation, the state courts' denial of this claim

23  was not contrary to, or an unreasonable application of, clearly-established Supreme Court

24  authority.

25       **2.    Bias**

26       Petitioner contends that the Board was biased.  The record shows that the Board

27  reviewed the evidence extensively and discussed it with petitioner and his attorney.  Ex. 1

28  at 10-56.  The Board's decision explains the facts it relied upon in finding him not suitable

1  for parole.  *Id.* at 57-63.  Both these factors tend to negate the accusation of bias, and

2  petitioner has not provided any evidence that would show otherwise.  The state courts'

3  rejection of this claim was not contrary to, or an unreasonable application of, clearly-

4  established Supreme Court authority.

5            **3.**      **Governor's Involvement**

6        Petitioner inexplicably states a contention that the governor is collaterally estopped

7  from over-riding a grant of a parole date by the Board.  As petitioner has not been given a

8  parole date, the governor has not over-ridden the Board as to petitioner.  Respondent

9  points this out in his answer, and petitioner does not dispute it in his traverse.  Petitioner

10  has failed to establish a factual basis for relief on this issue.

11                           **CONCLUSION**

12        The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

13        **IT IS SO ORDERED.**

14  Dated:  October 11, 2007.                    _____

15                               PHYLLIS J. HAMILTON
                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26  G:\PRO-SE\PJH\HC.05\CROSS283.RUL.wpd

27

28